Pfeifer, J.,
dissenting.
{¶ 33} One of these days, a company is going to surprise me and act honorably and with compassion. They are going to acknowledge their complicity in the grievous injuries suffered by their employee, they are going to adequately compensate their employee for his or her injuries, and they are going to do so without resorting to every countervailing stratagem that their high-priced counsel can devise. Today is not that day. Even though L.E. Myers has implicitly acknowledged its complicity by firing every person involved in the incident that caused Larry Hewitt’s injuries, even though L.E. Myers knows that, through its employees, it acted irresponsibly, L.E. Myers does not have to suffer the consequences; only its apprentice does.
*207 I
{¶ 34} The majority opinion ultimately concludes that “ ‘an equipment safety guard’ means a protective device on an implement or apparatus to make it safe and to prevent injury or loss.” Majority opinion at ¶ 18. This is a plausible, though not the best, conclusion. For one thing, it reads words into the statute, something courts are not supposed to do. See Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm., 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969), where we stated that this court has a duty “to give effect to the words used [in a statute], not to delete words used or to insert words not used.”
{¶ 35} R.C. 2745.01(C) refers to “[deliberate removal by an employer of an equipment safety guard.” The definition that the majority opinion has chosen to favor could have easily been written into the statute by changing three words: deliberate removal by an employer of a safety guard attached to equipment. That is the definition the majority opinion prefers, but it is not the statute that was enacted.
{¶ 36} Instead of adding words to the statute that the General Assembly could have easily added, instead of attempting to divine what the General Assembly intended, the better course is to read the statute as enacted and consider “equipment safety guard” as a unitary term. Viewed in that light, “equipment safety guard” has a simple meaning: equipment that is used as a safety guard. There is no need to add words to the statute. There is no need to divine intent. There is only a conclusion that the majority opinion does not want to countenance.
{¶ 37} The General Assembly chose not to define “equipment safety guard.” In my opinion, that is because they did not want an unduly restrictive meaning— one that they surely would have enacted had they chosen to. There are many “equipment safety guards” that absent the majority opinion’s new constrictive interpretation would give rise to a rebuttable presumption of intent to injure. Remember, the presumption is rebuttable, whereas the absence of the presumption is often, as in this case, dispositive.
{¶ 38} One example of an “equipment safety guard” the removal of which should give rise to a presumption to injure is a kill switch. Most dangerous machines have them. Hitherto, most reasonable people would have thought that removing a kill switch would give rise to a rebuttable presumption of intent to injure. Not anymore. Employers are now free to remove kill switches without troubling over R.C. 2745.01(C). Helmets, facemasks, and visors are other examples of equipment used as a safety guard, the removal of which will no longer lead to a rebuttable presumption of intent to injure. Governors, which prevent certain machines from operating too quickly, may now be removed *208 without concern that injuries that result will give rise to a rebuttable presumption pursuant to R.C. 2745.01(C). None of these equipment safety guards fit within the majority opinion’s draconian interpretation of R.C. 2745.01(C). The scope of the majority opinion is staggering and dangerous for employees.
{¶ 39} The short-term consequences of affirming the court of appeals’ decision would be de minimis. True, the employer would have to pay some money to its injured apprentice. But this is an employer whose experienced supervisors told an apprentice that he shouldn’t wear gloves and sleeves, equipment safety guards designed specifically to prevent the type of injury that occurred. Everyone involved with this case knows that the use of the equipment safety guards at issue would have prevented the apprentice’s injuries.
{¶ 40} For the injured apprentice, the damages are a considerable amount of money, but for the employer, the sums involved are not significant. L.E. Myers’s parent company, MYR Group, has a market capitalization of over $450 million and earned over $18 million in profits in 2011. The long-term consequences of reversing the court of appeals and imposing an unduly restrictive interpretation of “equipment safety guard” are potentially calamitous for Ohio’s workers because companies will have less incentive to ensure that their employees operate as safely as possible.
II
{¶ 41} Larry Hewitt sought recovery based on three grounds: that L.E. Myers acted with the specific intent to injure him, R.C. 2745.01(A); that L.E. Myers knew that its actions were substantially certain to injure him, R.C. 2745.01(A) and (B); and that L.E. Myers was presumed to have intended to injure him, R.C. 2745.01(C). The trial court indicated that it was going to limit the claim to the statutory presumption, though the court did not memorialize that conclusion in an entry. In the event, the court instructed the jury as to the “specific intent” and “substantially certain” grounds contained in R.C. 2745.01(A) and (B). Furthermore, the interrogatories addressed the concepts of substantially certain injury and conscious disregard for worker safety and did not address the statutory presumption. There is no reason to assume that the jury confined itself to consideration of the statutory presumption. To the contrary, there is ample reason to conclude that the jury considered the totality of R.C. 2745.01 in reaching its conclusion. The majority opinion does not even mention the jury instructions or interrogatories.
{¶ 42} Even with the majority opinion’s conclusion regarding R.C. 2745.01(C), the case should not be decided on the motion for a directed verdict. Instead, it *209 should be returned to the court of appeals to consider whether the jury’s conclusions with respect to R.C. 2745.01(A) and (B) are sustainable.
Plevin & Gallucci Co., L.P.A., Frank L. Gallucci III, and Michael D. Shroge; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee.
Tucker, Ellis & West, L.L.P., and Benjamin C. Sassé, for appellant.
The Mismas Law Firm, L.L.C., and John D. Mismas, urging affirmance for amicus curiae Ohio Association for Justice.
Reminger Co., L.P.A., and Brian D. Sullivan, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.
Roetzel & Andress, Denise M. Hasbrook, and Emily Ciecka Wileheck, urging reversal for amicus curiae FirstEnergy Corporation.
Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amicus curiae Ohio Chamber of Commerce.
Bricker & Eckler, L.P.A., and Robert R. Sant, urging reversal for amicus curiae Ohio Chapter of the National Federation of Independent Business.
Licata & Toerek and Elizabeth A. Crosby, urging reversal for amicus curiae Council of Smaller Enterprises.
{¶ 43} I dissent.